UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | No.   17-CR-10048-LTS |
| v. ] | |
| ] | |
| CLEBER RENE RIZERIO ROCHA ] | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government hereby submits this memorandum in support of its position at sentencing. Defendant Cleber Rene Rizerio Rocha ("Rocha") should be sentenced to 40 months of incarceration and three years of supervised release, and be required to forfeit assets as described in the indictment. It is undisputed that Rocha was a trusted member of a conspiracy to launder $20,000,000 in proceeds from a global pyramid scheme. Forty months of incarceration – well below the low end of the applicable Guideline range – is a proportional and just sentence.

## RELEVANT BACKGROUND

The TelexFree pyramid scheme, which was run by James Merrill and Carlos Wanzeler, was operating by February 2012 and eventually ensnared over a million victims before it collapsed two years later. In April 2014, agents raided TelexFree's offices in Marlborough, Massachusetts, prompting Wanzeler to flee first to Canada and then to Brazil. His abrupt departure, however, forced him to leave behind tens of millions of dollars he had laundered from TelexFree accounts and hidden somewhere in greater Boston.

Soon after Wanzeler fled, he began working on getting the hidden cash out of the United States. To that end he and his close associate, Leonardo Casula, dispatched Rocha to the United States as a kind of custodian for the money. Various items recovered by the Brazilian Federal Police – for example, photographs of Rocha with Wanzeler and Wanzeler's sister – attest to Rocha's close relationship with Wanzeler, and during his post-arrest interview Rocha himself

admitted to knowing Wanzeler well. Rocha was also familiar with TelexFree: TelexFree records confirm that he was a TelexFree investor, and during his interview he explained to the agents how TelexFree online credits could be sold to other investors for cash. *See Transcript of Video Recordings* ("*Transcript*") at 27-28.[1] As cooperating witnesses told the government in the TelexFree investigation, that is how Wanzeler laundered TelexFree funds: he added online credits to the accounts of certain favored TelexFree investors who then, literally, delivered duffle bags of cash to TelexFree headquarters in payment.

Most importantly, however, Rocha told the agents that he was the one who maintained and distributed Wanzeler's hidden cash in the United States. *See Transcript* at 27-35. Carlos first asked an acquaintance for help renting an apartment near Boston for Rocha to use. *See id.* 33-34. As Rocha told the agents, the woman renting the apartment had no idea that Rocha was using it to hide money. *Id.* at 34 ("She doesn't know of anything. She doesn't know what is there."). Rocha was then dispatched to the United States on three occasions (including this one), each time delivering about $2,000,000 from the stash to someone designated by Wanzeler or co-defendant Casula. *Id.* at 32 ("If I am not mistaken, this was the third."), 35 ("It used to vary a little. Two [million], two and a little bit."). Rocha also delivered $45,000 to Wanzeler's wife (something the agents observed during surveillance). *Id.* at 41. Rocha even moved the entire stash of $20,000,000, at Wanzeler's behest, from one apartment to another, *id.* at 54,[2] and is presumably the one who packed the cash into a hollowed-out box spring.

---

[1] A transcript of Rocha's interview with the agents has been previously submitted to the Court as an attachment to Rocha's motion to suppress (docket # 29-2). For ease of reference, pages 27-35 of the transcript are also attached here as **Exhibit A**.

[2] "The first time that I did that, he told me that there was money in an apartment and I needed to take to another apartment. I only came to know the amount when I got to the apartment, that at the time I was floored when I saw the quantity of suitcases that there were."

This is no small point: Wanzeler *trusted* Rocha with *$20,000,000*. Rocha himself acknowledged this.[3] As the one who maintained and distributed the cash, Rocha was not oblivious to any detail of the operation – he knew he was moving enormous amounts of U.S. currency (he had to count it out on each occasion), and he knew he was helping to move the money out of the United States illegally. Rocha also knew that the money was *TelexFree* money.[4] That is, he knew the money came from a fraud. Rocha himself invested in TelexFree and, by the time of his arrest in January 2017, he knew that (a) the Brazilian government had shut down TelexFree in that country (June 2013); (b) TelexFree in the U.S. had been raided by the FBI (April 2014), *see Transcript* at 29-30; (c) Wanzeler had fled the United States; (d) Wanzeler and co-founder James Merrill had been indicted in the United States (July 2014); and that Merrill had been convicted and sentenced for his role in the fraud (October 2016). Anything TelexFree-related was tremendously newsworthy in Brazil – a million Brazilians invested in the scam, which devastated entire towns when it collapsed. And yet Rocha was happy to hide the money in a box spring and deliver portions of it in suitcases to wherever Wanzeler or Casula told him to go.

## ARGUMENT

**I.    THE PROBATION DEPARTMENT'S GUIDELINE CALCULATION IS CORRECT**

The Probation Department's calculation of Rocha's Guideline range is correct (70-87 months). As to knowledge of the amount of money involved in the conspiracy alleged in Count I of the indictment, there can be no question that Rocha was fully aware of the magnitude of his

---

[3] Upon being asked why Carlos sent Rocha and not someone else to the United States, Rocha said, "I believe it was because of trust" built up during his working relationship with Wanzeler in a separate business. *See Transcript* at 30.

[4] "AGENT MELICAN: Did you know what that money was from? RIZERIO-ROCHA: He – As I told you, [Wanzeler] said it was his of [TelexFree] credit sale." *Id.* at 55.

illicit agreement with Wanzeler and Casula – it is Rocha who personally maintained, counted and distributed the stash. *See PSR* ¶ 40. The government concedes, however, that Rocha was minor participant in the conspiracy, ¶ 44, and is entitled to a further reduction for accepting responsibility. *See id*. ¶¶ 48-49.

Finally, as to the two-level enhancement for the use of sophisticated means, *id*. ¶ 42, the government is agnostic. The overall conspiracy contemplated the use of sophisticated means: Casula had agreed with the government's cooperating witness to use a domestic account to transfer the $2,200,000 to an account in Hong Kong, convert the dollars to Brazilians reals, and then transfer the funds from Hong Kong to an account in Brazil. It is not clear, however, whether Rocha knew this. During his interview, he denied knowing anything about what would happen to the money, but this is difficult to credit.

In any event, as discussed below, the government's recommendation is below the advisory Guideline range regardless of the enhancement.

## II. ROCHA SHOULD BE SENTENCED TO 40 MONTHS OF INCARCERATION BECAUSE HE WAS AN ACTIVE, CRUCIAL COMPONENT OF A LONG-TERM CONSPIRACY TO LAUNDER A STAGGERING AMOUNT OF MONEY

What is striking about Rocha's involvement in this conspiracy is that the aspects most relevant to sentencing are undisputed. When agents interviewed him after his arrest, Rocha at first lied about his involvement but then described it in detail for about an hour. Despite being upset and claiming (then and now) that he is just an innocent young computer programmer who happens to know Carlos Wanzeler, what Rocha actually described for the agents was his role as a long-term member of a substantial money laundering conspiracy.

As noted above, Rocha told the agents that his trip to the United States in January 2017 – to hand a suitcase of cash to a stranger (the government's CW) in a supermarket parking lot – was

not an anomaly. Rocha has done it twice before, on top of traveling here to move the entire stash from one hiding place to another. That is, on at least four occasions, Rocha was sent to a foreign country, with no oversight, to maintain and distribute *$20,000,000* in illegal cash. On January 4, 2017, when he met the CW in a restaurant parking lot, Rocha told him to move the drop across the street to another parking lot (clearly in an effort to shake surveillance). Rocha is no amateur. And he did all this with money he knew was derived from a global fraud scheme.

In short, Rocha knew *exactly* what he was doing and did it more than once. Moreover, he valued his own gain (which, at a minimum, was four free trips to the United States and whatever Wanzeler paid him) over the losses suffered by TelexFree's victims. Rocha was not suckered by Carlos Wanzeler's charm. He was not duped or manipulated. He is not an impressionable innocent, caught in a web of crime and intrigue. There is nothing mitigating his status as a crucial member of a conspiracy to launder fraud proceeds.

That said, after his arrest Rocha eventually told the agents where the remaining money was hidden and gave them consent to search the apartment. This allowed the government to seize the remaining cash and return it to TelexFree's victims. For that initial cooperation, the government has agreed to recommend a sentence below the advisory range. Also note that Rocha consents to deportation and seeks a judicial order of removal allowing the Department of Homeland Security to deport him without additional process once his prison term is complete. The government anticipates submitting the necessary paperwork at Rocha's sentencing hearing.

### III.   JAMES MERRILL'S SENTENCE IN THE TELEXFREE PROSECUTION IS A RED HERRING – ROCHA REPEATEDLY ENGAGED IN OBVIOUSLY CRIMINAL ACTIVITY WITH THE INTENT THAT IT SUCCEED

In October 2016, James Merrill, the former President of TelexFree, Inc., was sentenced to six years in prison, having pleaded guilty to charges of wire fraud conspiracy and wire fraud.

Rocha's counsel has occasionally raised this fact to argue that Rocha – as a mere courier and not the head of a global pyramid scheme – should be sentenced to time served.

There are two problems with this argument. First, the government sought a ten year sentence for Merrill, not the six years he received, and here the government is only seeking three years and four months. But, more importantly, Merrill's culpability bears no relation to Rocha's. It is true that TelexFree caused a staggering amount of financial harm, but the distinguishing feature of Merrill's case – the one that brought the case, literally, to the eve of trial – was the ambiguity of Merrill's criminal intent. He appeared to be a reluctant participant in a conspiracy driven by Wanzeler, and later took at least some steps to fix the fraudulent behemoth he had helped create. In short, and as the government said at Merrill's sentencing, his morally ambiguous behavior warranted a morally ambiguous prison term, which is what he received.[5]

In contrast, the evidence of Rocha's criminal intent is far clearer than that of Merrill's, a point obscured by the differing scale of each man's wrongdoing. Rocha *stuffed $2,000,000 into a suitcase* – using cash he pulled from a box spring he himself had packed with money on an earlier date – and gave it to a stranger in a parking lot. And he did that three times. Not much ambiguity there. Rocha never evinced the slightest reluctance to engage in what was obviously a crime. He never took steps to mitigate his own involvement or to convince his co-conspirators to take a legal, instead of illegal, approach (unlike James Merrill).

---

[5] The government's sentencing memorandum in Merrill's case discussed these issues at length. *See United States v. James Merrill*, No. 14-CR-40028-TSH, at docket # 332.

## **CONCLUSION**

Rocha should be sentenced to 40 months incarceration, three years of supervised release, and forfeiture as alleged in the indictment.

Respectfully submitted,

William D. Weinreb
Acting United States Attorney


By:    /s/ *Andrew Lelling*
        Andrew E. Lelling
        Assistant U.S. Attorney

Date:    December 19, 2017

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, on December 19, 2017.

/s/ *Andrew Lelling*
Andrew E. Lelling
